STATE OF CONNECTICUT *v.* THOMAS CENTENO
(SC 16494)

Norcott, Katz, Palmer, Vertefeuille and Zarella, Js.

Argued December 5, 2001—officially released January 15, 2002

*Joseph Visone*, special public defender, for the appellant (defendant).

*Michele C. Lukban*, assistant state's attorney, with whom, on the brief, were *Scott J. Murphy*, state's attorney, and *Mary Rose Palmese*, supervisory assistant state's attorney, for the appellee (state).

*Opinion*

KATZ, J. The sole issue in this certified appeal is whether the Appellate Court, in affirming the judgment of the trial court in a per curiam opinion; see *State* v. *Centeno*, 61 Conn. App. 906, 763 A.2d 1096 (2001); properly concluded that the trial court had not abused its discretion by failing to inquire into or investigate further the defendant's allegation, made following his conviction but before sentencing, that he knew one of the jurors in his case from a prior criminal relationship. We conclude that the trial court was required to conduct some inquiry regarding the allegation and, consequently, that the Appellate Court improperly affirmed the judgment.

The record discloses the following pertinent facts. The defendant, Thomas Centeno, was charged in connection with events that occurred in October, 1997, with the crimes of larceny in the third degree in violation

of General Statutes (Rev. to 1997) § 53a-124,[1] larceny in the third degree by possession in violation of General Statutes (Rev. to 1997) § 53a-124 and General Statutes § 53a-119 (8),[2] criminal trover in the first degree in violation of General Statutes § 53a-126a (a),[3] criminal mischief in the third degree in violation of General Statutes § 53a-117 (a),[4] and interfering with an officer in violation

[1] General Statutes (Rev. to 1997) § 53a-124 provides in relevant part: "(a) A person is guilty of larceny in the third degree when he commits larceny as defined in section 53a-119 and: (1) The property consists of a motor vehicle, the value of which is five thousand dollars or less . . . .

"(b) In any prosecution under subdivision (1) of subsection (a) of this section, evidence of (1) forcible entry, (2) forcible removal of ignition or (3) alteration, mutilation or removal of a vehicle identification number shall be prima facie evidence of a larcenous intent. . . ."

[2] General Statutes § 53a-119 provides in relevant part: "A person commits larceny when, with intent to deprive another of property or to appropriate the same to himself or a third person, he wrongfully takes, obtains or withholds such property from an owner. Larceny includes, but is not limited to . . .

"(8) Receiving stolen property. A person is guilty of larceny by receiving stolen property if he receives, retains, or disposes of stolen property knowing that it has probably been stolen or believing that it has probably been stolen, unless the property is received, retained or disposed of with purpose to restore it to the owner. A person who accepts or receives the use or benefit of a public utility commodity which customarily passes through a meter, knowing such commodity (A) has been diverted therefrom, (B) has not been correctly registered or (C) has not been registered at all by a meter, is guilty of larceny by receiving stolen property."

[3] General Statutes § 53a-126a (a) provides: "A person is guilty of criminal trover in the first degree when he forcibly enters or forcibly removes the ignition of the motor vehicle of another and uses the motor vehicle without the consent of such owner, and such use results in damage to or diminishes the value of such motor vehicle or subjects such owner to economic loss, fine or other penalty."

[4] General Statutes § 53a-117 (a) provides: "A person is guilty of criminal mischief in the third degree when, having no reasonable ground to believe that he has a right to do so, he: (1) Intentionally or recklessly (A) damages tangible property of another, or (B) tampers with tangible property of another and thereby causes such property to be placed in danger of damage; or (2) damages tangible property of another by negligence involving the use of any potentially harmful or destructive force or substance, such as, but not limited to, fire, explosives, flood, avalanche, collapse of building, poison gas or radioactive material."

of General Statutes § 53a-167a (a).[5] On March 4, 1999, the day his trial was to commence, the defendant was disruptive, combative and threatening, resulting in the trial court removing him from the courtroom and continuing his case to the following day. When court resumed the next day, the defendant was unwilling to assure the court that his disruptive behavior would not continue. As a consequence, the defendant was placed in handcuffs and leg shackles, which the trial court removed on the second day of jury selection following the defendant's agreement to conduct himself appropriately.

On the third day of jury selection, juror A.G. was questioned on voir dire. She related that she lived in Plainville, that she had never been a victim of a crime and that she did not know of anyone who had been a victim. Additionally, she stated that she was unfamiliar with any of the names of the parties or witnesses, that she knew of no reason why she could not decide the case fairly and impartially, that she would be able to put aside any feelings of sympathy for anyone involved in the case, and, finally, that she could apply the pertinent legal principles properly. Thereafter, juror A.G. was accepted to sit as a juror by both parties.

Following the trial, the jury returned a guilty verdict on the five offenses charged and the case was continued to July 23, 1999, for sentencing. At the sentencing hearing, defense counsel alerted the court to the fact that the defendant no longer wanted his representation. Defense counsel then notified the court that the defendant had telephoned him from jail one week earlier to inform him that the defendant had realized during the course of his trial that he knew one of the jurors personally.

---

[5] General Statutes § 53a-167a (a) provides: "A person is guilty of interfering with an officer when he obstructs, resists, hinders or endangers any peace officer or fireman in the performance of his duties."

Specifically, the defendant informed counsel that when he lived in Southington, an acquaintance of his had proposed that he help a woman from Plainville who wanted assistance committing an insurance fraud by vandalizing some property for her. The defendant claimed that he previously had met the woman and that she had given him her telephone number. Defense counsel stated that when he questioned the defendant about his failure to relate this information sooner, the defendant responded that, due to the stress of trial, he had been unable to connect the juror with the incident, but that upon further reflection while in jail, he realized that she was indeed the woman who had wanted his help perpetrating the insurance fraud. The court responded: "[Y]our remarks are noted." Defense counsel then asked whether, despite this information, the court was going to proceed with sentencing. The court responded: "Yes, I am."

Thereafter, the trial court canvassed the defendant about whether he wanted defense counsel to represent him at sentencing. The defendant provided the court with a document that he had written and responded that he wanted the court to appoint him another attorney. When the court denied his request, the defendant became verbally abusive and was escorted from the courtroom. During a recess, the court read the document that the defendant had furnished. When court resumed, the defendant, who was in a holding area adjacent to the courtroom due to his disruptive manner, heard the trial court relate its intent to proceed with the sentencing. Following another recess, the defendant was returned to the courtroom. He complained that his attorney had forced him to proceed to trial, but agreed to allow counsel to argue on his behalf at sentencing because he had no one else to represent him. Following counsel's argument for leniency, the trial court imposed

a sentence of ten years, execution suspended after six years, followed by three years probation.

The defendant appealed from the judgment of conviction to the Appellate Court, which, in a per curiam opinion, affirmed the judgment. *State* v. *Centeno*, supra, 61 Conn. App. 906. Thereafter, the defendant petitioned this court for certification. We granted his petition, limited to the following issue: "Did the Appellate Court properly conclude that, with respect to the question of whether one of the jurors and the defendant knew each other from a prior, possibly criminal relationship, the trial court did not abuse its discretion in not inquiring or investigating further?" *State* v. *Centeno*, 255 Conn. 950, 769 A.2d 63 (2001).

The defendant claims that the trial court's failure to hold an evidentiary hearing violated his state and federal constitutional rights.[6] Specifically, he asserts that, pursuant to this court's opinion in *State* v. *Brown*, 235 Conn. 502, 526, 668 A.2d 1288 (1995), the trial court was obligated to conduct a preliminary inquiry, on the record, into the alleged juror misconduct. The state contends in response that an inquiry by the trial court was unnecessary in this case because the defendant's

_____

[6] The constitution of Connecticut, article first, § 8, as amended by article seventeen of the amendments, provides in relevant part: "In all criminal prosecutions, the accused shall have a right to be heard by himself and by counsel; to be informed of the nature and cause of the accusation; to be confronted by the witnesses against him; to have compulsory process to obtain witnesses in his behalf; to be released on bail upon sufficient security, except in capital offenses, where the proof is evident or the presumption great; and in all prosecutions by information, to a speedy, public trial by an impartial jury. . . ."

The sixth amendment to the United States constitution provides in relevant part: "In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury . . . ."

The due process clause of the fourteenth amendment to the United States constitution extends to state court defendants the sixth amendment right to be tried by an impartial jury. *Nebraska Press Assn.* v. *Stuart*, 427 U.S. 539, 551, 96 S. Ct. 2791, 49 L. Ed. 2d 683 (1976).

allegation was "facially incredible." Essentially, the state contends that "[t]o require the trial court to pursue even a preliminary inquiry in the absence of a facially credible claim would deprive it of its discretion in deciding how to respond to claims of juror misconduct."

Our jurisprudence on the issue of the right to an impartial jury is well settled. "Jury impartiality is a core requirement of the right to trial by jury guaranteed by the constitution of Connecticut, article first, § 8, and by the sixth amendment to the United States constitution. . . . [T]he right to jury trial guarantees to the criminally accused a fair trial by a panel of impartial, indifferent jurors. . . . The modern jury is regarded as an institution in our justice system that determines the case solely on the basis of the evidence and arguments given [it] in the adversary arena after proper instructions on the law by the court. . . . *State* v. *Santiago*, 245 Conn. 301, 330, 715 A.2d 1 (1998); *State* v. *Myers*, 242 Conn. 125, 140, 698 A.2d 823 (1997); *State* v. *Brown*, [supra, 235 Conn. 522–23]; see also *State* v. *Cruz*, 212 Conn. 351, [364–66] 562 A.2d 1071 (1989). [Article first, § 8, and the sixth amendment require] that a criminal defendant be given a fair trial before an . . . unprejudiced jury . . . . *State* v. *Woodson*, 227 Conn. 1, 30, 629 A.2d 386 (1993); *State* v. *Hernandez*, 218 Conn. 458, 463, 590 A.2d 112 (1991); accord *State* v. *Esposito*, 223 Conn. 299, 308, 613 A.2d 242 (1992); *State* v. *Brigandi*, 186 Conn. 521, 542–43, 442 A.2d 927 (1982)." (Internal quotation marks omitted.) *State* v. *Griffin*, 251 Conn. 671, 695–96, 741 A.2d 913 (1999).

In light of the significance of this right, in *Brown*, exercising our inherent supervisory power over the administration of justice, we concluded that "a trial court must conduct a preliminary inquiry, on the record, *whenever it is presented with any allegations of jury misconduct in a criminal case*, regardless of whether an inquiry is requested by counsel." (Emphasis added.)

*State* v. *Brown,* supra, 235 Conn. 526. Furthermore, we determined that "[a]lthough the form and scope of such an inquiry lie within a trial court's discretion, the court must conduct some type of inquiry in response to allegations of jury misconduct. That form and scope may vary from a preliminary inquiry of counsel, at one end of the spectrum, to a full evidentiary hearing at the other end of the spectrum, and, of course, all points in between. Whether a preliminary inquiry of counsel, or some other limited form of proceeding, will lead to further, more extensive, proceedings will depend on what is disclosed during the initial limited proceedings and on the exercise of the trial court's sound discretion with respect thereto." Id.; accord *State* v. *Respass,* 256 Conn. 164, 190–91, 770 A.2d 471, cert. denied, 534 U.S. 1002, 122 S. Ct. 478, 151 L. Ed. 2d 392 (2001).

By its argument that the trial court properly may reject an allegation by concluding that no further inquiry is warranted, the state appears to blur the distinction between a preliminary inquiry mandated under *Brown,* and one that involves a more thorough investigation. This distinction expressly was recognized in *Brown* and again, more recently, in *Santiago*: "[T]here may well be cases . . . in which a trial court will rightfully be persuaded, solely on the basis of the allegations before it and the preliminary inquiry of counsel on the record, that such allegations lack any merit." (Internal quotation marks omitted.) *State* v. *Santiago,* supra, 245 Conn. 332. Therefore, the defendant is not arguing that the trial court failed to conduct an extensive inquiry into his allegations, or that the court did not have the discretion ultimately to assess the seriousness or the credibility of the allegations, but, rather, that it improperly failed to conduct even the most elementary inquiry required to satisfy *Brown.*[7] In light of the allegation, which we

[7] We recognize that the defendant exhibited disruptive behavior throughout his criminal proceedings. We further note that that conduct continued while he was awaiting sentencing, resulting in forty-three disciplinary tickets

cannot characterize as facially incredible, some inquiry was required. We therefore agree with the defendant and, accordingly, we conclude that the Appellate Court improperly affirmed the judgment of the trial court.

The judgment of the Appellate Court is reversed and the case is remanded to that court with direction to remand it to the trial court for further proceedings consistent with this opinion.

In this opinion the other justices concurred.

while in jail. Furthermore, his predilection for delay was obvious. Therefore, while we appreciate the reluctance of the trial court to pursue the defendant's allegations, as we state in this opinion, *some* inquiry was required. We therefore remand the case to the trial court, without reversing the judgment of conviction, so that an inquiry into the defendant's allegations can occur.