STATE OF CONNECTICUT *v.* RUBEN ROMAN
(SC 16678)

Sullivan, C. J., and Borden, Katz, Palmer and Zarella, Js.

Argued December 6, 2002—officially released March 18, 2003

*Michael A. Georgetti*, for the appellant (defendant).

*John A. East III*, senior assistant state's attorney, with whom, on the brief, were *James E. Thomas*, state's attorney, and *Robin Cutuli*, assistant state's attorney, for the appellee (state).

*Opinion*

PALMER, J. A jury found the defendant, Ruben Roman, guilty of murder in violation of General Statutes § 53a-54a,[1] assault in the first degree in violation of General Statutes § 53a-59 (a) (1),[2] criminal possession of a pistol in violation of General Statutes (Rev. to

---

[1] General Statutes § 53a-54a provides in relevant part: "(a) A person is guilty of murder when, with intent to cause the death of another person, he causes the death of such person . . . ."

[2] General Statutes § 53a-59 (a) provides in relevant part: "A person is guilty of assault in the first degree when: (1) With intent to cause serious physical injury to another person, he causes such injury to such person or to a third person by means of a deadly weapon or a dangerous instrument . . . ."

1997) § 53a-217c (a) (1)[3] and risk of injury to a child in violation of General Statutes (Rev. to 1997) § 53-21.[4] The trial court rendered judgment in accordance with the jury verdict,[5] from which the defendant appealed to the Appellate Court. On appeal to the Appellate Court, the defendant claimed, inter alia, that the trial court improperly had declined to conduct a preliminary inquiry into his allegation of juror misconduct. The Appellate Court rejected the defendant's claim and affirmed the judgment of the trial court. *State* v. *Roman*, 67 Conn. App. 194, 219, 786 A.2d 1147 (2001). We granted the defendant's petition for certification to appeal, limited to the following issue: "Did the Appellate Court properly conclude that the trial court was not required to hold a preliminary inquiry regarding the defendant's claim of juror misconduct?" *State* v. *Roman*, 259 Conn. 920, 791 A.2d 567 (2002). Because we agree with the defendant that the trial court improperly declined to conduct a preliminary inquiry into the defendant's claim of juror misconduct, we reverse in part the judgment of the Appellate Court.[6]

[3] General Statutes (Rev. to 1997) § 53a-217c (a) provides in relevant part: "A person is guilty of criminal possession of a pistol or revolver when he possesses a pistol or revolver, as defined in section 29-27, and (1) has been convicted of a felony or of a violation of subsection (c) of section 21a-279, section 53a-58, 53a-61, 53a-61a, 53a-62, 53a-63, 53a-96, 53a-175, 53a-176, 53a-178 or 53a-181d . . . ."

[4] General Statutes (Rev. to 1997) § 53-21 provides in relevant part: "Any person who (1) wilfully or unlawfully causes or permits any child under the age of sixteen years to be placed in such a situation that the life or limb of such child is endangered, the health of such child is likely to be injured or the morals of such child are likely to be impaired, or does any act likely to impair the health or morals of any such child . . . shall be guilty of a class C felony."

[5] The trial court sentenced the defendant to a total effective term of eighty years imprisonment.

[6] On appeal to the Appellate Court, the defendant raised two additional claims, namely, that: (1) his constitutional right to present a defense was violated based on the trial court's failure to instruct the jury that it had to decide whether he was so intoxicated by virtue of his ingestion of cocaine that he lacked the specific intent to commit murder and assault in the first degree; and (2) he was deprived of his right to a jury trial when the court,

The following facts and procedural history are relevant to our resolution of this appeal. At trial, the state adduced evidence that, on December 24, 1997, the defendant and his live-in girlfriend, Maria Torres-Arroyo, hosted a holiday party at the single-family home that they shared in East Hartford. At around midnight, the defendant left to drive several of his family members home. When he returned at approximately 3 a.m. on December 25, 1997, he found Torres-Arroyo sitting at the dining room table with Israel Arroyo, her brother-in-law from a previous marriage, and her son and nephew.[7] Shortly after the defendant returned home, he and Torres-Arroyo began to argue. The argument escalated, and the defendant, who had consumed alcoholic beverages and cocaine that same evening, shot at Torres-Arroyo several times with a .45 caliber semiautomatic pistol. The defendant also repeatedly shot Israel Arroyo. Although seriously injured, Torres-Arroyo survived the attack. Israel Arroyo, however, died as a result of gunshot wounds to the abdomen while en route to the hospital.

On January 19, 2000, the jury found the defendant guilty of murder, assault in the first degree, criminal possession of a pistol and risk of injury to a child. The trial court thereupon scheduled sentencing for March 15, 2000. For reasons that do not appear in the record, however, that hearing subsequently was rescheduled for March 13, 2000.

When the sentencing hearing commenced on March 13, 2000, the following colloquy occurred between the court, defense counsel and the defendant:

rather than the jury, determined whether he had used a firearm in the commission of a class A, B or C felony for purposes of General Statutes § 53-202k. *State* v. *Roman*, supra, 67 Conn. App. 196–97. The Appellate Court rejected both of these claims; id., 206–207, 211; neither of which is before us in this appeal.

[7] Torres-Arroyo's son and nephew both were under the age of sixteen at the time.

"[Defense Counsel]: Judge, may I put some things on the record before we begin. [The defendant] wants to address the court as well. I am asking for a continuance of the sentencing. This was originally set down for last week and there was some confusion as to the date, then I thought it was on [March 15, 2000]. I have been unable to speak with [the defendant]. As you can see, he was in an altercation. He was attacked by someone. He has been in [segregation] for the past two weeks and [he could not] contact me. He tells me his parents, who are [in] their seventies, are up from Puerto Rico. Also, one of his sons [is] in college in South Carolina and wanted to be present for the sentencing.

"[The defendant] has also indicated to me [that] he has witnesses coming [March 15] to testify as to various acts of jur[or] misconduct, and the private attorney . . . [that the defendant] has retained, although I haven't been given this person's name, for the testimony for an evidentiary hearing . . . [on March 15].

"For those reasons, we request a continuance. The family is on [its] way and not present, and [the defendant] has these witnesses and other counsel scheduled to come for [March 15]. We respectfully ask the court for a continuance until [March 15]. I know the victim's family is here, and it's a terrible inconvenience for them.

"My suggestion to the court would be to hear from them today and continue the other matters until [March 15] and proceed from there. I believe [the defendant] wanted to address the court as well.

"[The Defendant]: Yes.

"The Court: At this time, what do you think with [regard] to these matters?

\* \* \*

"[The Defendant]: What I want to say, my lawyer right here tells me one of the jurors was talking to the victim's family, and I think that is unfair to me.

"The Court: I am not going to go through facts in regard to this. At this point, you have explained what [the defendant's] problem is, what he thinks and what he wants to do. He explained that to the court. It is on the record. I will not go through it again with [the defendant]. I understand what you said. If he doesn't have anything new to say to me, then I will ask that we proceed.

"[The Defendant]: I have a few things to say if you let me.

"The Court: Anything new?

"[The Defendant]: Yes. I have two witnesses about the whole case.

"The Court: I was told that. I will not go through that.

"[The Defendant]: All right.

"The Court: Is that it?

"[The Defendant]: Yeah.

"The Court: All right . . . . First, I heard your counsel and the request for a continuance, and I don't feel at this time with so much time having pas[sed] and you having an opportunity . . . to get counsel and an opportunity for your family to be up from Puerto Rico, that is why we set these matters off for a while.

"In addition, so that the probation department can get a report to us, and so on. It's also for any other matters that you may have to take care of. It's been a while now and you [have] had plenty of time to take care of these matters. I will not continue the matter. Any motion regarding a continuance . . . is denied."

On appeal to the Appellate Court, the defendant claimed, inter alia, that the trial court improperly had declined to conduct a preliminary inquiry into his allegation of juror misconduct that he had raised at the sen-

tencing hearing. A majority of the Appellate Court panel rejected the defendant's claim, concluding that, in light of the "unique characteristics of the allegations of juror misconduct brought before the court in the present case"; *State* v. *Roman*, supra, 67 Conn. App. 215; the trial court did not abuse its discretion in declining to take any further action. Id., 219. In so concluding, the Appellate Court underscored the fact that the source of the allegation of juror misconduct was not a disinterested party, a juror, or even defense counsel, who appeared to know very little about the substance of the allegation and who made no effort to corroborate it. Id., 215–17. The Appellate Court also noted that the defendant had not brought his allegation of juror misconduct to the attention of the trial court until the sentencing hearing, a fact that the Appellate Court characterized as "problematic"; id., 216; in light of the "uncertainty that could result and the opportunity for fraudulent claims that could exist if a defendant possessed the power to control the proceedings against him by being able to delay or postpone his or her sentencing by personally making allegations of juror misconduct in this manner just minutes before a court is to impose sentence." Id., 216–17. Finally, the Appellate Court observed that "[t]he defendant's possible motive in making the allegation is obvious, and, after having observed the defendant testify during trial and recognizing that the jury had found him guilty of the crimes, the [trial] court could have quickly dismissed the defendant's allegation as having been fabricated and decided that further inquiry was unnecessary." Id., 217–18.

Judge Shea dissented from the majority opinion of the Appellate Court with respect to the disposition of the defendant's claim regarding the need for further inquiry into the defendant's allegation of juror misconduct. Id., 219 (*Shea, J.*, dissenting). Specifically, Judge Shea concluded that the trial court had abused its dis-

cretion by "summarily dismiss[ing] the defendant's allegations without any inquiry into the source of the information"; id., 220 (*Shea, J.,* dissenting); and by "abruptly preclud[ing] any further discussion of the matter" even though the defendant had represented to the court that he was prepared to produce witnesses to corroborate his allegation. Id. In Judge Shea's view, "[a]t a minimum, the court's evaluation of the credibility of the [defendant's] allegation required inquiry into the identity of the witnesses and the substance of their proposed testimony." Id.

The defendant contends that, contrary to the conclusion of the Appellate Court, the trial court was required to conduct a preliminary inquiry into his claim of juror misconduct. We agree with the defendant.

"Our jurisprudence on the issue of the right to an impartial jury is well settled. Jury impartiality is a core requirement of the right to trial by jury guaranteed by the constitution of Connecticut, article first, § 8,[8] and by the sixth amendment to the United States constitution.[9] . . . [T]he right to jury trial guarantees to the criminally accused a fair trial by a panel of impartial, indifferent jurors. . . . The modern jury is regarded as an institution in our justice system that determines the case solely on the basis of the evidence and arguments given [it] in the adversary arena after proper instructions on the law by the court. . . . [Article first, § 8, and the sixth amendment require] that a criminal defen-

---

[8] Article first, § 8, of the constitution of Connecticut, provides in relevant part: "In all criminal prosecutions, the accused shall have a right . . . to a . . . trial by an impartial jury. . . ."

[9] The sixth amendment to the United States constitution provides in relevant part: "In all criminal prosecutions, the accused shall enjoy the right to a . . . trial, by an impartial jury . . . ."

The sixth amendment right to a trial by an impartial jury is applicable to the states through the due process clause of the fourteenth amendment to the United States constitution. See *Turner* v. *Murray*, 476 U.S. 28, 36 n.9, 106 S. Ct. 1683, 90 L. Ed. 2d 27 (1986).

dant be given a fair trial before an . . . unprejudiced jury . . . ." (Citations omitted; internal quotation marks omitted.) *State* v. *Centeno*, 259 Conn. 75, 81, 787 A.2d 537 (2002).

"To ensure that the jury will decide the case free from external influences that might interfere with the exercise of deliberate and unbiased judgment . . . *a trial court is required to conduct a preliminary inquiry, on the record, whenever it is presented with information tending to indicate the possibility of juror misconduct or partiality.* . . . We previously have instructed that the trial court should consider the following factors in exercising its discretion as to the form and scope of a preliminary inquiry into allegations of jury misconduct: (1) the criminal defendant's substantial interest in his constitutional right to a trial before an impartial jury; (2) the risk of deprivation of the defendant's constitutional right to a trial before an impartial jury, which will vary with the seriousness and the credibility of the allegations of jury misconduct; and (3) the state's interests of, inter alia, jury impartiality, protecting jurors' privacy and maintaining public confidence in the jury system." (Emphasis added; internal quotation marks omitted.) *State* v. *Feliciano*, 256 Conn. 429, 448, 778 A.2d 812 (2001).

"Furthermore, we [have] determined that [a]lthough the form and scope of such an inquiry lie within a trial court's discretion, *the court must conduct some type of inquiry in response to allegations of jur[or] misconduct.* That form and scope may vary from a preliminary inquiry of counsel, at one end of the spectrum, to a full evidentiary hearing at the other end of the spectrum, and, of course, all points in between. Whether a preliminary inquiry of counsel, or some other limited form of proceeding, will lead to further, more extensive . . . proceedings will depend on what is disclosed during the initial limited proceedings and on the exercise of

the trial court's sound discretion with respect thereto." (Emphasis added; internal quotation marks omitted.) *State* v. *Dorans*, 261 Conn. 730, 751–52, 806 A.2d 1033 (2002).

"Any assessment of the form and scope of the inquiry that a trial court must undertake when it is presented with allegations of [juror bias or] misconduct will necessarily be fact specific. No one factor is determinative as to the proper form and scope of a proceeding. It is the trial court that must, in the exercise of its discretion, weigh the relevant factors and determine the proper balance between them. . . . Consequently, the trial court has wide latitude in fashioning the proper response to allegations of juror bias. . . . We [therefore] have limited our role, on appeal, to a consideration of whether the trial court's review of an alleged jury misconduct can fairly be characterized as an abuse of its discretion. . . . Although we recognize that trial [c]ourts face a delicate and complex task whenever they undertake to investigate reports of juror misconduct or bias . . . we nevertheless have reserved the right to find an abuse of discretion in the highly unusual case in which such an abuse has occurred." (Internal quotation marks omitted.) *State* v. *Feliciano*, supra, 256 Conn. 448–49.

In the present case, the trial court failed to make any meaningful inquiry into a specific and facially credible claim of juror misconduct, namely, that a juror had spoken to a member of the victim's family. Defense counsel expressly represented to the trial court that the defendant had retained new counsel to handle that claim and, further, that the defendant was prepared to produce witnesses who would "testify as to various acts of jur[or] misconduct . . . ." Despite these representations, the trial court did not seek any additional facts or information, either from the defendant or from defense counsel, regarding the defendant's allegation.

Indeed, the court refused to entertain any further discussion of the matter. "The overarching principle behind the scope of the preliminary inquiry into allegations of juror misconduct is that the breadth of questioning should be sufficient to permit the entire picture to be explored . . . ." (Internal quotation marks omitted.) *State* v. *Santiago*, 245 Conn. 301, 336, 715 A.2d 1 (1998). Inasmuch as the trial court failed to explore the substance of the defendant's allegation, the record is insufficient for a determination of whether the defendant's right to a trial by an impartial jury was compromised.

We acknowledge, of course, that "it is within the discretion of the trial court to make credibility assessments and determine whether the allegations [of juror misconduct] are facially credible." Id., 337. In other words, allegations of juror bias or misconduct that are outlandish or absurd on their face need not be the subject of unwarranted investigation. See id., 337 n.22. In the present case, however, the defendant's claim of juror misconduct was neither facially incredible nor clearly unsupportable. Although it is true that the allegation did not surface until the sentencing hearing, the date of that hearing had been advanced two days, and defense counsel, himself, indicated that even *he* was confused by the rescheduling *and* that he had been unable to speak with the defendant, apparently because the defendant, who had been incarcerated, was being held in segregation. Viewed in light of these representations, the defendant's explanation that newly acquired counsel was not prepared to proceed to a hearing on the defendant's allegation of juror misconduct until two days later—the very day for which his sentencing originally was scheduled—hardly is implausible.[10] Thus, the

---

[10] We disagree with the Appellate Court that defense counsel's failure to corroborate the defendant's allegation of juror misconduct lends credence to the trial court's summary rejection of the defendant's claim. See *State* v. *Roman*, supra, 67 Conn. App. 217. Indeed, defense counsel may not have been adequately informed about the defendant's claim of juror misconduct

issue of whether the defendant's request for a continuance should have been granted necessarily depended upon what information the trial court would have gleaned from an inquiry into the defendant's claim of juror misconduct. Inasmuch as the trial court did not conduct such an inquiry, however, we simply are unable to determine whether the defendant was entitled to the requested continuance.

We conclude, therefore, that the trial court improperly declined to conduct the requisite inquiry into the defendant's claim of juror misconduct. Consequently, the defendant is entitled to a fair opportunity to substantiate his claim.[11]

The judgment of the Appellate Court is reversed with respect to the Appellate Court's disposition of the defendant's claim that the trial court improperly declined to conduct a further inquiry into his allegation of juror misconduct and the case is remanded to the Appellate Court with direction to remand the case to the trial court for further proceedings according to law. The judgment of the Appellate Court is affirmed in all other respects.

In this opinion the other justices concurred.

because, as he explained to the court, he was unable to speak with the defendant for some period of time prior to sentencing and, in addition, the defendant had retained new counsel to represent him in connection with that matter. More importantly, however, once the defendant informed the trial court of his allegation of juror misconduct, the court's affirmative duty of inquiry reasonably encompassed the obligation to ask defense counsel what further light, if any, he could shed on the defendant's allegation.

[11] We are aware that, as the Appellate Court observed, a defendant may be motivated to raise a late claim of juror misconduct solely for the purpose of delaying the proceedings. *State* v. *Roman*, supra, 67 Conn. App. 216–17. We believe, however, that trial courts generally will be able to ferret out contrived or frivolous claims of juror misconduct without the need for protracted or extended inquiry or investigation. Furthermore, the mere fact that a defendant raises a claim of juror misconduct *after trial*—indeed, information regarding juror misconduct often will not come to light until after a trial has concluded—does not *necessarily* mean that that claim lacks merit; each claim of juror misconduct, including a claim that is raised late in the proceedings, must be evaluated on its own merits.