STATE OF CONNECTICUT *v.* FATHY N. KAMEL
(AC 25786)

McLachlan, Lavine and McDonald, Js.

Argued October 29, 2008—officially released June 30, 2009

*Raymond L. Durelli*, special public defender, for the appellant (defendant).

*Michele C. Lukban*, senior assistant state's attorney, with whom, on the brief, were *David I. Cohen*, state's attorney, and *Robert Diaz*, assistant state's attorney, for the appellee (state).

*Opinion*

LAVINE, J. The defendant, Fathy N. Kamel, appeals from the judgment of conviction, rendered after a jury trial, of two counts of failure to keep narcotics in the original container in violation of General Statutes § 21a-257, and one count each of criminal trespass in the first degree in violation of General Statutes § 53a-107, possession of narcotics in violation of General Statutes § 21a-279 (a), possession of less than four ounces of marijuana in violation of § 21a-279 (c), interfering with an officer in violation of General Statutes § 53a-167a, use of drug paraphernalia in violation of General Statutes § 21a-267 (a), possession of marijuana within 1500 feet of a school in violation of § 21a-279 (d) and possession of narcotics within 1500 feet of a school in violation of § 21a-279 (d). On appeal, the defendant claims that the trial court (1) violated his constitutional right to counsel when it failed to conduct an inquiry into his allegation that he was indigent, (2) improperly denied his motion to suppress evidence obtained during the search of a bag that belonged to him and (3) failed to conduct a preliminary on the record inquiry after learning that the jury was exposed during its deliberations to brass knuckles, which were marked for identification but not admitted into evidence as an exhibit. We agree with the defendant's third claim and therefore reverse the judgment and remand the case for a new trial. Because the defendant's second claim is likely

to arise in the event of a new trial, we also address that claim.[1]

## I

We first address the defendant's claim that the court violated his constitutional right to a fair trial when it failed to conduct a proper preliminary, on the record inquiry after learning that the jurors were exposed during their deliberations to evidence that had been marked for identification but not admitted into evidence as an exhibit. We agree with the defendant.

The jury reasonably could have found the following facts. On September 27, 2002, state marshal Anthony Verrico, after having served the defendant with an eviction notice three days earlier, arrived at 135 Washington Avenue in South Norwalk to take possession of the premises, take an inventory and change the locks. The defendant ran a store at that address and, on September 27, 2002, was in the process of vacating the location. Verrico started to inventory the items found on the premises and came across a black bag that the defendant informed him was his own and not a part of the store inventory. After the defendant refused to leave the premises, the police officers arrived. The officers eventually arrested the defendant without a warrant and took him to the police station. The arresting officer, Mark DeVito, took the defendant's bag to the station and searched it. DeVito testified at trial, in the presence of the jury, that among the items he found in the bag was a pair of brass knuckles. After the state moved to introduce the brass knuckles into evidence, the defendant objected on the ground that the they were not relevant, and the court sustained his objection in the presence of the jury.

---

[1] In light of our conclusion, we do not reach the issue of whether the court violated the defendant's constitutional right to counsel when it failed to conduct an inquiry into the defendant's allegation that he was indigent.

On April 20, 2004, following the conclusion of the evidence and arguments, the jury returned its verdict finding the defendant guilty of all charges. On July 27, 2004, the court, *Wilson, J.*, summoned the prosecutor and the defendant, who was representing himself. Judge Wilson informed them, for the first time, that on April 20, 2004, she went into the jury room after the jurors reached the verdict to thank them for their service and saw that the brass knuckles had been in the jury room during the jury deliberations. The court also stated, without providing further explanation, that "it was brought to [its] attention that . . . the jurors knew they weren't supposed to consider the knuckles and that they were not considered." The court stated that it would give the defendant and the prosecutor an opportunity to address this issue, but it also repeatedly stated that on the basis of its research, it believed that the presence of the brass knuckles in the jury room was a harmless evidentiary error. The defendant stated at one point: "But as far as the error is harmless, I mean, who is to say that the error is harmless after the jury had done [its] duty and gone . . . ." The court stated that it would allow the defendant to file a motion for a mistrial by August 10, 2004, the date scheduled for sentencing. On August 6, 2004, the defendant filed a motion for a judgment of acquittal or a new trial.

On August 10, 2004, at the hearing on the defendant's motion and the sentencing hearing, before the defendant's argument, the court reiterated its conclusions that the presence of the brass knuckles in the jury room was an evidentiary and not a constitutional error, that the defendant had the burden to prove its harmfulness and that it believed that the error was harmless. After hearing the arguments, the court concluded that the defendant had not met his burden in establishing that the presence of the brass knuckles in the jury room affected the outcome of the trial and denied his motion

for a judgment of acquittal or a new trial. The defendant was sentenced to five years in prison, execution suspended after two years and one day, and five years probation.

"Jury impartiality is a core requirement of the right to trial by jury guaranteed by the constitution of Connecticut, article first, § 8, and by the sixth amendment to the United States Constitution." *State* v. *Brown*, 235 Conn. 502, 522, 668 A.2d 1288 (1995). "[T]he right to a jury trial guarantees to the criminally accused a fair trial by a panel of impartial, indifferent jurors. . . . A necessary component of the right to an impartial jury is the right to have the jury decide the case solely on the basis of the evidence and arguments given them in the adversary arena after proper instructions on the law by the court. . . . Consideration of extrinsic evidence is jury misconduct and has been found to be sufficient to violate the constitutional right to trial by an impartial jury." (Citations omitted; internal quotation marks omitted.) *State* v. *Migliaro*, 28 Conn. App. 388, 395, 611 A.2d 422 (1992).

Our review on appeal is limited to the inquiry of whether the court's review of the alleged jury misconduct can be characterized fairly as an abuse of discretion. *State* v. *Rivera*, 84 Conn. App. 245, 254, 853 A.2d 554, cert. denied, 271 Conn. 934, 861 A.2d 511 (2004).

"Our review of the scope of the trial court's preliminary inquiry into allegations of jury misconduct is governed by *State* v. *Brown*, supra, 235 Conn. 502. In *Brown*, we exercised our supervisory authority over the administration of justice to hold that . . . *a trial court must conduct a preliminary inquiry, on the record, whenever it is presented with any allegations of jury misconduct in a criminal case, regardless of whether an inquiry is requested by counsel.* Id., 526. We reiterated that the trial court has broad discretion

to determine the form and scope of the proper response to allegations of jury misconduct; id., 523–24; and instructed that [i]n exercising that discretion, the trial court must zealously protect the rights of the accused. Id., 524." (Emphasis added; internal quotation marks omitted.) *State* v. *Anderson*, 255 Conn. 425, 436, 773 A.2d 287 (2001).

We conclude that the court in the present case abused its discretion because it failed to conduct a meaningful, on the record, preliminary inquiry as required by *Brown* and its progeny. In *Brown*, our Supreme Court held that a duty to conduct a preliminary inquiry was triggered when the court received an anonymous letter informing it that the jurors overheard the sheriffs' statements that they were betting that the defendant would be found guilty because he was black and from New York. *State* v. *Brown*, supra, 235 Conn. 519–20. In the present case, the court was aware that the jurors, during their deliberations, were exposed to an item not admitted into evidence and often associated with violent criminal acts. Brass knuckles are not an innocuous item but one that would suggest to the average juror that the defendant, charged with interfering with an officer, among other crimes, had violent, unlawful propensities. It is well established that consideration of extrinsic evidence is jury misconduct sufficient to violate the constitutional right to trial by an impartial jury. See, e.g., *State* v. *Migliaro*, supra, 28 Conn. App. 395. In *Migliaro*, this court held that the trial court was presented with indicia that jurors were exposed to potentially prejudicial extrinsic evidence sufficient to trigger its duty to investigate potential jury misconduct further when it found out that a juror brought medical books into the courthouse. Id., 396. On the basis of this precedent, we conclude that a duty to conduct a preliminary hearing similarly was triggered in the present case when

the court learned that the jurors, during their deliberations, were exposed to, and therefore might have considered, potentially prejudicial evidence that had not been admitted as an exhibit. See *State* v. *Stuart*, 113 Conn. App. 541, 553, 967 A.2d 532 (2009) (jury's viewing of evidence admitted for identification purposes only may be deemed improper viewing of extrinsic evidence).

We are also guided by our Supreme Court's recent holding in *Connecticut Light & Power Co.* v. *Gilmore*, 289 Conn. 88, 956 A.2d 1145 (2008). Although *Connecticut Light & Power Co.* is a civil case that does not address *Brown*, we find it instructive that the court treated the jury's improper consideration of a document marked for identification and not admitted into evidence as an exhibit as jury misconduct, although it ultimately held that the trial court did not abuse its discretion in denying the defendant's motion for a new trial. See id., 101–105. Our conclusion is further supported by federal cases that have held that jurors' consideration of evidence not fully admitted as an exhibit is consideration of extrinsic evidence for the purposes of the defendant's constitutional rights under the sixth amendment to the United States constitution. In *Benjamin* v. *Fischer*, 248 F. Sup. 2d 251, 260–61 (S.D.N.Y. 2002), aff'd, 87 Fed. Appx. 761 (2d Cir. 2004), the court determined that the jurors considered extrinsic evidence when they read the redacted portions of a police report, although the report was admitted as a defense exhibit. See also *United States* v. *Harber*, 53 F.3d 236, 239–40 (9th Cir. 1995) (report marked for identification and not fully admitted as exhibit deemed extrinsic evidence because it was present in jury room during deliberations); see also *United States* v. *Ofray-Campos*, 534 F.3d 1, 15, 20 (1st Cir.) (jury exposed to extrinsic information when it considered court's note providing it

with factual information), cert. denied, 555 U.S. 1020, 129 S. Ct. 588, 172 L. Ed. 2d 444 (2008).

We next address the scope and form of the preliminary inquiry required under *Brown*. Our Supreme Court has instructed that in exercising the broad discretion the trial court has in determining the scope and form of the proper response to potential jury misconduct, "[it] should consider the following factors . . . (1) the criminal defendant's substantial interest in his constitutional right to a trial before an impartial jury; (2) the risk of deprivation of the defendant's constitutional right to a trial before an impartial jury, which will vary with the seriousness and the credibility of the allegations of jury misconduct; and (3) the state's interests of, inter alia, jury impartiality, protecting jurors' privacy and maintaining public confidence in the jury system. . . . [A]ny assessment of the form and scope of the inquiry that a trial court must undertake when it is presented with allegations of jury misconduct will necessarily be fact specific." (Citation omitted.) *State* v. *Santiago*, 245 Conn. 301, 331, 715 A.2d 1 (1998).

In *Anderson*, our Supreme Court concluded that the inquiry conducted by the court into allegations of jury misconduct was adequate to safeguard the defendant's right to a fair trial before an impartial jury. *State* v. *Anderson*, supra, 255 Conn. 437. After receiving information that a juror made improper remarks in front of other jurors, the court disclosed this information to counsel and gave them an opportunity to submit questions for the juror who reported the remarks to the court. Id., 430–37. The court then interviewed the juror who reported the remarks, the juror who made the remarks, as well as all of the other jurors and alternate jurors, individually and on the record, to determine whether they could be fair and impartial. Id. The court

determined that the jurors were credible in their assertions that they could be impartial and base their decisions only on the evidence presented. Id., 437; see also *State* v. *Alston*, 272 Conn. 432, 453, 862 A.2d 817 (2005) (court did not abuse discretion and clearly satisfied preliminary inquiry required by *Brown* when, immediately after learning about alleged misconduct and on record, it notified both counsel and allowed them to respond and demand further inquiry into misconduct); *State* v. *Necaise*, 97 Conn. App. 214, 224, 904 A.2d 245 (court responded appropriately by conducting preliminary inquiry of counsel, on record, about note it received from juror during recess, gave both parties opportunity to assess nature of potential prejudice and propose possible remedial actions, including requesting further inquiry by court of juror who had written note), cert. denied, 280 Conn. 942, 912 A.2d 478 (2006).

Conversely, this court has held that the trial court abused its discretion when it failed to conduct a preliminary inquiry pursuant to *Brown* after defense counsel informed it that a juror, in a trial in which medical evidence was critical to the jury's resolution of the issue of the cause of the victim's death, brought medical books into the courthouse. *State* v. *Migliaro*, supra, 28 Conn. App. 392. The court in *Migliaro* failed to ascertain whether any of the jurors used information from the books during the course of deliberations or to make a rudimentary inquiry into the substantive contents of the books, especially whether the books contained any information that might be interpreted by a reader to be material to the issues in that case. Id., 396–97; see also *State* v. *Roman*, 262 Conn. 718, 727–28, 817 A.2d 100 (2003) (court abused discretion when it failed to conduct meaningful inquiry into specific and facially credible allegation that jury member had spoken to victim's family); *State* v. *Brown*, supra, 235 Conn. 519, 526 (court

abused discretion when it failed to conduct, with appropriate participation of both counsel, at least preliminary inquiry into allegations made in anonymous letter delivered to it after jury reached verdict and before sentencing).

The court in the present case, therefore, initially failed to do what was minimally required under *Brown*, which is to inform both sides that the jury was exposed to the brass knuckles. See id., 526 ("form and scope may vary from a preliminary inquiry of counsel, at one end of the spectrum, to a full evidentiary hearing at the other end of the spectrum, and, of course, all points in between"). As in *Brown*, the court in the present case was aware of the jury's exposure to potentially prejudicial information before the defendant was sentenced. See id., 525 (emphasizing that letter alleging misconduct was brought to court's attention before sentencing and therefore before rendering final judgment). Yet, the court waited three months to inform the parties of what transpired in the jury room on April 20, 2004, and offered no explanation for this delay. The fact that it eventually told the defendant and the prosecutor about the jury's exposure to the brass knuckles does not satisfy the bare minimum requirement under *Brown* because the passage of time and the court's firm initial conclusion that no harm had occurred, coupled with the failure to immediately inform counsel and hold an on the record inquiry, in effect precluded any meaningful preliminary inquiry at that point. See id., 524–25 (court abused its discretion where defendant had only limited opportunity to ask for inquiry into allegations of jury misconduct).

The court's ex parte interactions with the jurors and its unilateral determination that they did not consider the brass knuckles during their deliberations further failed to fulfill the requirements of *Brown* because any preliminary inquiry must be conducted on the record.

See id.; see also *State* v. *Centeno*, 259 Conn. 75, 81–82, 787 A.2d 537 (2002); *State* v. *Anderson*, supra, 255 Conn. 436.[2] "Although the trial court enjoys broad discretion in determining whether jury misconduct occurred, and, if so, whether such misconduct prejudiced the defendant . . . the court must have some factual basis on which to exercise that discretion." (Internal quotation marks omitted.) *State* v. *Jaynes*, 35 Conn. App. 541, 562, 645 A.2d 1060, cert. denied, 231 Conn. 928, 648 A.2d 880 (1994). The factual basis on which the court relied in the present case was established off the record and without either parties' knowledge or input, running afoul of the requirements of *Brown*. We therefore conclude that the court abused its discretion when it failed to conduct a proper on the record inquiry after learning that the jurors had the brass knuckles with them during the deliberations.

We next turn to the question of a proper remedy in the present case. Failure to conduct the required preliminary inquiry on the record ordinarily results in a remand to the trial court with instructions to conduct a proper preliminary hearing. See, e.g., *State* v. *Migliaro*, supra, 28 Conn. App. 397; *State* v. *Gonzalez*, 25 Conn. App. 433, 440, 596 A.2d 443 (1991), aff'd, 222 Conn. 718,

---

[2] We also note here that "[t]he judicial authority shall require that a record be kept of all communications received by it from a juror or the jury after the jury has been sworn, and it shall not communicate with a juror or the jury on any aspect of the case itself, as distinguished from matters relating to physical comforts and the like, except after notice to all parties and reasonable opportunity for them to be present. . . . In a criminal trial, ex parte conversations between the judge and jury are constitutionally prohibited." (Internal quotation marks omitted.) *State* v. *Teti*, 50 Conn. App. 34, 43, 716 A.2d 931, cert. denied, 247 Conn. 921, 722 A.2d 812 (1998).

Although it is common practice for judges to enter the jury room after a verdict has been returned to thank the jury for its service and converse with jurors about their experience, any communication with jurors regarding the impact that the brass knuckles might have had on their deliberations should have been conducted on the record and in open court, after advising counsel of the problem.

609 A.2d 1003 (1992). In this case, however, we conclude that a remand with instructions to conduct a proper preliminary hearing is not an adequate remedy. The court's off the record, ex parte communication with the jurors regarding their exposure to extrinsic evidence, its unilateral conclusion that the exposure was a harmless evidentiary error and the significant passage of time since May 20, 2004, preclude any possibility that a meaningful on the record inquiry could be conducted today. Because the usual remedy of remand for a hearing would serve no useful purpose, the case must be remanded for a new trial.[3]

II

In light of our decision to reverse the judgment of conviction and to remand the case for a new trial, we

---

[3] We remand this case for a new trial fully aware of the fact that a new trial is ordinarily reserved for those cases in which the jury misconduct has prejudiced the defendant to the extent that he has not received a fair trial. See *State* v. *Rhodes*, 248 Conn. 39, 47, 726 A.2d 513 (1999). In cases in which the trial court is directly implicated in juror misconduct, the state bears the burden of proving that misconduct was harmless error, while in cases where the trial court is in no way responsible for the juror misconduct, a defendant who offers proof of juror misconduct bears the burden of proving that actual prejudice resulted from that misconduct. Id.

We cannot, however, determine what impact the jurors' exposure to the brass knuckles had in this case because the court failed to conduct the basic factual inquiry on the record at the time it became aware of the exposure. We do not question the sincerity of the court's initial conclusion, based on its discussions with the jurors, that no harm occurred. As *Brown* and its progeny instruct, and experience teaches, however, a private, off the record inquiry by the court is no substitute for an on the record inquiry where the jurors' responses are subject to possible examination and evaluation in an adversary setting. Where the "record is too barren . . . to determine what misconduct, if any, took place and whether it was prejudicial . . . [w]e cannot speculate whether there was some extraneous influence involved . . . . Nor may we speculate that there was no misconduct, or if such did exist that it probably was not prejudicial, or fanciful or frivolous. A basic factual inquiry into the substantive content of the alleged misconduct was required *before* the trial court could exercise its discretion in determining the scope or extent of any investigation needed." (Emphasis added.) *State* v. *Gonzalez*, supra, 25 Conn. App. 440.

turn to the defendant's claim that the court, *Hon. Jack Grogins*, judge trial referee, improperly denied his motion to suppress the evidence obtained during the search of his bag because it failed to conduct an evidentiary hearing on his motion to suppress. We agree.

The following facts are relevant to our consideration of the defendant's claim. On March 21, 2003, the defendant filed a notice of a motion for return of unlawfully seized property and suppression of evidence. On May 20, 2003, Judge Grogins wrote on the notice: "To be heard prior to trial." On June 10, 2003, the defendant filed a memorandum of law in support of the motion, describing his version of the events that led to his arrest on September 27, 2002, and arguing that DeVito seized his property in violation of his right against unreasonable searches and seizures guaranteed by the fourth amendment to the United States constitution. On September 23, 2003, Judge Grogins held a hearing on the motion. Almost the entire hearing was devoted to determining what property the defendant wanted returned.[4] Near the end of the hearing, the following exchange occurred:

"[The Defendant]: Well, what I'm trying to say, Your Honor, this motion here is to return the property and suppress the evidence.

"The Court: I understand that.

"[The Defendant]: To be used against me.

"The Court: I understand that.

"[The Defendant]: Am I being denied this motion?

"The Court: You are being denied; that's right.

"[The Defendant]: I think—

---

[4] Our review of the transcript indicates that this was, at least in part, due to the defendant's poor command of the English language.

"The Court: Except as to the glasses.

"[The Defendant]: Okay, so can we make a section in the record that I've been denied return of property—

"The Court: It's in the record.

"[The Defendant]:—and suppression—

"The Court: It's right in the record, sir. It's right in the record."

On April 6, 2004, the day of jury selection, Judge Wilson told the defendant: "[Y]ou indicated that you had [a] motion to suppress you wanted to deal with. We will deal with that after we finish [with] jury selection today, so we'll deal with that toward the end of the day." The defendant replied: "Yes, Your Honor." The hearing, however, was never held.

On August 1, 2006, Judge Grogins wrote "approved" on the September 23, 2003, transcript, and on August 4, 2006, the following note was added: "Decision entered in accordance with the foregoing." On August 16, 2006, the defendant filed a motion for articulation of the court's denial of his motion to suppress evidence. On September 11, 2006, the court filed an articulation of its denial of the defendant's motion to suppress evidence. In the articulation, Judge Grogins stated that the defendant's motion was denied because "seized items were germane to the state's case [and] at the time of the defendant's arrest at his former occupied premises were lawfully taken by the police pursuant to a lawful arrest and a search incident thereto." (Citation omitted.)

We set forth our standard of review. "Under the exclusionary rule, evidence must be suppressed if it is found to be the fruit of prior police illegality. . . . On appeal, we apply a familiar standard of review to a trial court's findings and conclusions in connection with a motion

to suppress. A finding of fact will not be disturbed unless it is clearly erroneous in view of the evidence and pleadings in the whole record. . . . [W]here the legal conclusions of the court are challenged, we must determine whether they are legally and logically correct and whether they find support in the facts set out in the memorandum of decision. . . . Whether the trial court properly found that facts submitted were enough to support a finding of probable cause is a question of law. . . . Because a trial court's determination of the validity of a . . . search [or seizure] implicates a defendant's constitutional rights, however, we engage in a careful examination of the record to ensure that the court's decision was supported by substantial evidence. . . . However, [w]e . . . give great deference to the findings of the trial court because of its function to weigh and interpret the evidence before it and to pass upon the credibility of witnesses." (Internal quotation marks omitted.) *State* v. *Bonner*, 110 Conn. App. 621, 633, 955 A.2d 625, cert. denied, 289 Conn. 955, 961 A.2d 421 (2008).

"The [f]ourth [a]mendment to the United States constitution protects the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable search and seizures. Ordinarily, police may not conduct a search unless they first obtain a search warrant from a neutral magistrate after establishing probable cause. [A] search conducted without a warrant issued upon probable cause is per se unreasonable . . . subject only to a few specifically established and well-delineated exceptions. . . . These exceptions have been jealously and carefully drawn . . . and the burden is on the state to establish the exception. . . . One such exception is the seizure of evidence incident to a lawful arrest." (Citation omitted; internal quotation marks omitted.) *State* v. *Johnson,*

286 Conn. 427, 434, 944 A.2d 297, cert. denied, 555 U.S. 883, 129 S. Ct. 236, 172 L. Ed. 2d 144 (2008).

We are unpersuaded by the state's arguments that the portions of the transcript from the September 23, 2003 hearing indicate that the defendant and the court were "merely speaking over each other," that it is unclear whether the court denied the defendant's motion to suppress evidence, that we should disregard the court's subsequent articulation of its decision and that we should conclude that the defendant's claim is unreviewable because he never pursued his motion to suppress evidence. We conclude that the court denied the defendant's motion to suppress evidence because it stated so twice during the hearing and subsequently issued an articulation of the denial.

We are, however, unable to determine whether the court's denial of the motion to suppress evidence was proper because the court did not make factual findings before it denied the motion. The entire hearing conducted on September 23, 2003, was essentially devoted to the determination of the exact items the defendant wanted returned, and it is unclear what facts led the court to conclude that the seizure of his bag was the product of a search incident to a lawful arrest. See *State v. Clark*, 255 Conn. 268, 291, 764 A.2d 1251 (2001) ("the state bears the burden of proving that an exception to the warrant requirement applies when a warrantless search has been conducted").[5]

We conclude that because the defendant was deprived wrongly of a chance to pursue his motion to suppress evidence, he should have the opportunity to do so on remand.

---

[5] We additionally decline the defendant's invitation to conclude that the court's denial of his motion to suppress evidence was improper on the basis of the facts introduced at the trial, after the hearing on the motion to suppress.

The judgment is reversed and the case is remanded for a new trial.

In this opinion the other judges concurred.