******************************************

The "officially released" date that appears near the beginning of an opinion is the date the opinion will be published in the Connecticut Law Journal or the date it is released as a slip opinion. The operative date for the beginning of all time periods for the filing of postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying an opinion that appear in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced or distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************

KELLER, J., concurring. I am in agreement with, and join the analysis contained in, the well reasoned majority opinion in this case, but I have reservations regarding the suggestion that the trial court possibly could have brought the jurors back into the courtroom for individual polling after the judge had met and conversed with them in the deliberation room. In my view, the judge's meeting with the members of the jury effectively terminated the ability to conduct a poll, as such an event amounted to what the United States Court of Appeals for the Second Circuit has described as an "outside factor" that renders the reliability of any jury poll on recall problematic. See, e.g., *United States* v. *Rojas*, 617 F.3d 669, 678 (2d Cir. 2010); see also *United States* v. *Marinari*, 32 F.3d 1209, 1214 (7th Cir. 1994) (jury remains undischarged and may be recalled only where it remains as undispersed unit within control of court and with no opportunity to mingle with or discuss case with others); *Summers* v. *United States*, 11 F.2d 583, 586 (4th Cir.) (same), cert. denied, 271 U.S. 681, 46 S. Ct. 632, 70 L. Ed. 1149 (1926). Stated differently, "intervening comments by a judge can undermine the defendant's right to poll the jury." *United States* v. *Harlow*, 444 F.3d 1255, 1267 (10th Cir. 2006).

Additionally, it is unclear what conduct the jurors had participated in after being dismissed by the trial judge in the courtroom. As stated in the majority opinion, the jurors' oath, as set forth in General Statutes § 1-25, obligates the members of a jury to "not talk to each other about this case until instructed to do so; [and] not speak to anyone else, or allow anyone else to speak to you, about this case until you have been discharged by the court . . . ." See footnote 10 of the majority opinion. After accepting and recording the verdict, the judge told the jury, "I want to let you know that your jury service is ended. You're free from your oath at this point." At that point, she said nothing to

the jurors about speaking to them in the deliberation room. She only asked them to wait there for the courtroom clerk to bring them some documentation, most likely juror evaluation forms. Her statements on the record to the jurors after the verdict was recorded and accepted were effectively a discharge of the jury, even if the jurors were asked to wait when they got back to the deliberation room. In the absence of a full-blown hearing, there is no way of knowing what behaviors the jurors engaged in before the judge's entry into the deliberation room. They were free to speak about the case and their verdict on their cell phones with nonjurors, potentially with relatives, friends, the jury alternates, employers, the courtroom clerk who was ordered to bring some documents to them, courthouse marshals, and groups comprised of only some, not all, members of the jury.[1] The jurors also were free to look up news and social media reports concerning the case.[2]

---

[1] In its instructions to the jury after counsel's closing arguments, the court stated: "You may only deliberate when all six of you are present in the jury room."

[2] I am mindful of our Supreme Court's discussion in *State* v. *Pare*, 253 Conn. 611, 755 A.2d 180 (2000), of when a jury has been discharged. In that case, the court observed that the discharge of a jury occurs when its members are relieved from any further responsibilities in the case. See id., 628. This does not necessarily occur when the members of a jury depart from the courtroom. Id., 629. Rather, our Supreme Court explained: "When a jury remains as an undispersed unit within the control of the court *and with no opportunity to mingle with or discuss the case with others, it is undischarged* and may be recalled." (Emphasis added; internal quotation marks omitted.) Id., 630, 633–34. In the present case, advances in technology have made it possible for the members of a jury to now communicate almost instantly with others once the trial court has released them from the juror oath and its corresponding obligations. That presents issues that were not before the court in *Pare*.

This court has observed that modern cell phones are a pervasive and insistent part of daily life, and that "these devices are in fact minicomputers that also happen to have the capacity to be used as a telephone. They could just as easily be called cameras, video players, [R]olodexes, calendars, tape recorders, libraries, diaries, albums, televisions, maps, or newspapers." (Internal quotation marks omitted.) *State* v. *Sayles*, 202 Conn. App. 736, 742 n.7, 246 A.3d 1010 (2021), aff'd, 348 Conn. 669, 310 A.3d 929 (2024). I note

Moreover, we do not know the substance of the full conversation the judge exchanged with the jurors in the deliberation room. What questions were asked? How did she answer them? The influence of any of these behaviors irrevocably taints any attempted poll. The reason counsel must request a poll before the jurors are discharged from their oath is to preserve the protective bubble of isolation that every trial judge strives to preserve throughout the trial. See, e.g., *United States* v. *Figueroa*, 683 F.3d 69, 73 (3d Cir. 2012) (trial courts impose protective shield throughout proceeding to prevent members of jury from influence of outside factors). Because we have no way of ascertaining what behaviors all of the jurors may have engaged in after they left the courtroom, and their potential influence, I do not see how any subsequent poll would not have been suspect.

I also write separately to express my own view that, although it may be a "common practice" for a trial judge to enter the jury room to converse with the members of the jury about their experience and thank them for their service after a verdict has been returned; *State* v. *Kamel*, 115 Conn. App. 338, 349 n.2, 972 A.2d 780 (2009); this case provides a concrete example of the inherent dangers of doing so. I recognize that our appellate courts have observed that a trial judge may engage in an ex parte meeting with a jury after it has returned a verdict for the purpose of thanking the jurors for their

that the ubiquitous nature and the constantly expanding capabilities of cell phones are vastly different from those found in such devices at the time *Pare* was decided. Specifically, the use of a present day cell phone affords a member of a jury a greater ability to communicate almost instantly with nonjurors, whether by voice or by text, and to use the Internet, including social media, to access information regarding the subject of the trial while remaining part of the "undispersed unit within the control of the court . . . ." *State* v. *Pare*, supra, 253 Conn. 630. These concerns were not present twenty-five years ago. In other words, despite the jury remaining as an undispersed unit in the courthouse, it is far more difficult to ensure that a jury today remains "untainted by any outside conduct." Id., 631.

service, answering questions unrelated to the deliberative process, promoting good public relations, and soliciting feedback regarding the administration of the jury process as a permissible exercise of a judge's administrative functions. See, e.g., *Tessmann* v. *Tiger Lee Construction Co.*, 228 Conn. 42, 56–57, 634 A.2d 870 (1993); *State* v. *Durant*, 94 Conn. App. 219, 231–32, 892 A.2d 302 (2006), aff'd, 281 Conn. 548, 916 A.2d 2 (2007); see generally *Gillingham Construction, Inc.* v. *Newby-Wiggins Construction, Inc.*, 142 Idaho 15, 25–26, 121 P.3d 946 (2005) (after verdict but before posttrial matters have concluded, judge may thank members of jury for their service and address issues of juror convenience but door between bench and jury must remain closed while case remains pending). While I do not question the benefits of such exchanges, the corresponding unintended risks that could result from a stray remark made by a juror to the judge who has presided over a trial may prove to be too great and result in the otherwise unnecessary expenditure of judicial resources, including an additional hearing, or even a new trial.

I urge my colleagues to be vigilant and to exercise great caution when speaking with a jury after it has returned a verdict. First, the judge should request that a clerk be present with him or her when the discussion occurs. Prior to any discussion, the judge should unequivocally advise the jury that it will not entertain any questions, and no one should comment concerning the merits of the case, the verdict, or the deliberations of the jury, just as the trial judge attempted to do in the present case, to no avail. Frankly, I would suggest a more cautionary approach. After the acceptance of the verdict, I would directly ask counsel if they want to have the jury polled, not just generally inquire: "Anything else, counsel?" A trial judge might sua sponte consider polling the jurors individually if such a poll is not requested by counsel pursuant to Practice Book

§ 42-31. Then, provided counsel have no further issues to raise, I would remain on the record, with counsel present, and advise the jurors that they are discharged from their service, relieved of their oath, and are free to discuss the case with nonjurors only if they want to do so. I would then thank them for their service and release them.

I respectfully concur in the reasoning and judgment of the majority opinion.