******************************************************

The "officially released" date that appears near the beginning of an opinion is the date the opinion will be published in the Connecticut Law Journal or the date it is released as a slip opinion. The operative date for the beginning of all time periods for the filing of postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying an opinion that appear in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced or distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

## STATE OF CONNECTICUT *v.* ANGEL A.*
## (AC 47294)

Moll, Westbrook and Keller, Js.

### *Syllabus*

Convicted, following a jury trial, of attempt to commit murder and other crimes, the defendant appealed. He claimed, inter alia, that the trial court violated his right to jury unanimity by discharging the jury after accepting its verdict but before disclosing to the parties that one of the jurors had made an ex parte comment to the court in the deliberation room that she felt "a little guilty about the attempted murder charge." *Held*:

The defendant's unpreserved claim that the trial court violated his right to jury unanimity failed under the third prong of *State* v. *Golding* (213 Conn. 233), as the juror's comment was simply a statement about how she felt about the verdict that could not reasonably be construed as an equivocation or expression of reservation about it and did not indicate that she or any other juror had not agreed to the verdict, and, because this court could not infer that the juror intended her comment to inform the trial court that the jury's verdict was not unanimous, that court's failure to disclose the comment to the parties before discharging the jury did not amount to a constitutional violation.

The trial court did not abuse its discretion by conducting a limited inquiry during a posttrial hearing about the juror's comment and denying the defendant's request to inquire into why she made that comment, as the court's actions did not deprive the defendant of his right to a fair trial but, rather, satisfied the preliminary inquiry into possible juror misconduct required under *State* v. *Brown* (235 Conn. 502), the juror having affirmed her verdict and the court, on the basis of the juror's testimony, having determined that there was no indication that the jury's verdict lacked unanimity or that juror misconduct had occurred, and further questioning of the juror would have constituted improper inquiry into the mental processes by which the verdict was determined.

(*One judge concurring and one judge dissenting in separate opinions*)

Argued February 10—officially released October 7, 2025

---

* In accordance with federal law; see 18 U.S.C. § 2265 (d) (3) (2018), as amended by the Violence Against Women Act Reauthorization Act of 2022, Pub. L. No. 117-103, § 106, 136 Stat. 49, 851; we decline to identify any person protected or sought to be protected under a protection order, protective order, or a restraining order that was issued or applied for, or others through whom that person's identity may be ascertained.

*Procedural History*

Two part substitute information charging the defendant, in the first part, with the crimes of attempt to commit murder, assault in the first degree and criminal violation of a protective order, and, in the second part, with having committed an offense while on release, brought to the Superior Court in the judicial district of Windham, geographical area number eleven, and tried to the jury before *Swords, J.*; verdict and judgment of guilty, from which the defendant appealed to this court. *Affirmed.*

*Lisa J. Steele*, assigned counsel, for the appellant (defendant).

*Jonathan M. Sousa*, assistant state's attorney, with whom, on the brief, were *Anne F. Mahoney*, state's attorney, and *Louis Luba, Jr.*, supervisory assistant state's attorney, for the appellee (state).

*Opinion*

WESTBROOK, J. The defendant, Angel A., appeals from the judgment of conviction, rendered after a jury trial, of attempt to commit murder in violation of General Statutes §§ 53a-49 (a) (2) and 53a-54a, assault in the first degree in violation of General Statutes § 53a-59 (a) (1), and criminal violation of a protective order in violation of General Statutes § 53a-223 (c) (2).[1] The defendant claims that the trial court improperly (1) violated his right to jury unanimity by discharging the jury before disclosing to the parties a postverdict comment made to the court by a member of the jury, C.A.,[2] following the acceptance of the verdict that she "[felt] a little guilty about the attempted murder charge," and

---

[1] On appeal, the defendant challenges only his conviction of attempt to commit murder in violation of §§ 53a-49 (a) (2) and 53a-54a.

[2] "The jurors are referred to by their initials to protect their privacy interests." *State* v. *Hughes*, 341 Conn. 387, 406 n.13, 267 A.3d 81 (2021).

(2) violated his right to a fair trial by denying his request to question C.A. at a posttrial hearing about why she made that postverdict comment. We disagree and, accordingly, affirm the judgment of the court.

The following facts, which the jury reasonably could have found, and procedural history are relevant to our resolution of this appeal. In August and September, 2016, the defendant was in a romantic relationship with the victim, R.[3] On August 30, 2016, the defendant and R got into an argument, the police were called, and protective orders were issued against both parties. On September 24, 2016, the defendant and R again got into a heated argument, which, this time, culminated in the defendant's approaching R from behind and stabbing her in the back three times with a knife. R was able to escape from her apartment and call the police. The defendant, who followed R out of the apartment building, admitted to neighbors who were aiding R that he had stabbed her. When the police arrived, he raised his hands and yelled: "[I]t was me, Papi! It was me!" The defendant was arrested and charged with attempt to commit murder in violation of §§ 53a-49 (a) (2) and 53a-54a, assault in the first degree in violation of § 53a-59 (a) (1) and criminal violation of a protective order in violation of § 53a-223 (c) (2).

The case was tried to a panel of six jury members on November 28, 29 and 30, and December 3 and 4, 2018. On December 5, 2018, the jury found the defendant

---

[3] In accordance with our policy of protecting the privacy interests of the victims of family violence, we decline to identify the victim or others through whom the victim's identity may be ascertained. See General Statutes § 54-86e.

Moreover, in accordance with federal law; see 18 U.S.C. § 2265 (d) (3) (2018), as amended by the Violence Against Women Act Reauthorization Act of 2022, Pub. L. No. 117-103, § 106, 136 Stat. 49, 851; we decline to identify any person protected or sought to be protected under a protection order, protective order or a restraining order that was issued or applied for, or others through whom that person's identity may be ascertained.

guilty on all counts. After the jury foreperson announced the verdict, the following colloquy took place:

  "[The Court]: Well, first I'd like to ask, do the other five members of the jury agree with the foreperson's verdict?

  "[The Jurors]: Yes.

  "[The Court]: Okay. And the record may reflect that all of the jurors responded affirmatively. As a result of that, the court orders that the jury verdict be accepted and recorded. And with that  .  .  .  [a]nything further from counsel at this point?

  "[Defense Counsel]: No, Your Honor.

  "[The Prosecutor]: Nothing, Your Honor.

  "[The Court]: Okay.  .  .  .  Ladies and gentlemen, I want to let you know that your jury service is ended. You're free from your oath at this point.  .  .  . So, with that, I thank you and ask you to go back into the jury deliberation room for a short period of time. The clerk has some paperwork that she needs to give you, and after that, we'll release you to go home. Thank you."

  Thereafter, the members of the jury returned to the deliberation room. The court, *Swords, J.*, elected to speak with the jurors prior to their dismissal and later stated on the record: "When I first walked in, I told the jurors I was there to answer any questions they might have about the trial, or about the Connecticut court system, or about the criminal justice system. I also told them that I did not want to discuss their verdict or anything about their deliberations. Several of the jurors asked me questions about the court system. After approximately five to seven minutes, one of the jury members [C.A.] said, 'I feel a little guilty about the attempted murder charge.' This jury member did not indicate why she felt a little guilty, and I did not ask

her any questions about her comment. While I was with the jury, no other jurors made any comments about their verdict."

Two days after conversing with the jury, on December 7, 2018, the trial court held a telephone conference with defense counsel and the prosecutor during which it disclosed that, after the verdict was recorded but before the jury left the deliberation room, C.A. had told the court that she felt "a little guilty about the attempted murder charge." The trial court, sua sponte, scheduled a posttrial hearing with the parties and C.A. to "make further inquiry" into C.A.'s comment. At the hearing, which took place on December 12, 2018, the following colloquy took place between the court and C.A.:

"[The Court]: Now, you will recall last Wednesday that, at the conclusion of your deliberations, the jury came out, and your foreperson . . . reported the verdict . . . upon questioning from the clerk.

"[C.A.]: Yes.

"[The Court]: The clerk asked him what the verdict was as to count one, attempted murder, [and] he said guilty. As to count two, assault in the first degree, he said guilty. As to count three, violation of a protective order, he said guilty.

"[C.A.]: Correct.

"[The Court]: Do you recall that?

"[C.A.]: Yes.

"[The Court]: Okay. And then, immediately thereafter, the clerk asked the jury as a whole, collectively, whether they agreed with the verdict as reported by the foreperson.

"[C.A.]: Yes.

"[The Court]: Do you remember that? And did you say yes when the clerk asked that question?

"[C.A.]: I *absolutely* did." (Emphasis added.)

Thereafter, outside the presence of C.A., defense counsel made the following request: "Your Honor, I would just ask if the court would inquire of the juror . . . if her comments to the court after the verdict was recorded were based on any reasons she may have to believe that any juror may have not followed the instructions given by the court." The prosecutor objected to any additional questioning on the ground that it is not appropriate to inquire into the jury's deliberative process. Defense counsel countered: "[T]he reason why I phrased the requested question the way I did was to perhaps get close, but not to cross that line. I understand the state's position that it would be inappropriate for the court to ask why the juror said that, but I think it would be appropriate for the court to ask if there's any reason this juror may have to believe that any juror failed to follow the instructions."

The trial court stated: "I will deny [defense counsel's] request. There is absolutely no indication from . . . that sole comment that the juror said to me, that this involved any misconduct on the part of anybody, either as part of the jury or someone outside the jury. So, I don't think that your request is appropriate under the limited scope of the hearing that the Supreme Court has set out in *State* v. *Brown* [235 Conn. 502, 668 A.2d 1288 (1995)] and other cases. . . . So . . . [C.A.] is free to leave." The court explained that, in deciding the scope of the posttrial hearing, it considered, inter alia, Practice Book § 42-33, *State* v. *Johnson*, 288 Conn. 236, 951 A.2d 1257 (2008), *State* v. *Gary*, 273 Conn. 393, 869 A.2d 1236 (2005), and *State* v. *Castonguay*, 194 Conn. 416, 481 A.2d 56 (1984). The court concluded: "[T]he court cannot find that there's any evidence that this

juror did not vote guilty in the jury room [and] affirm the verdict as entered by all of . . . her fellow jury members. Any further inquiry would invade the deliberative process and the state of mind of this juror. And the court finds [that this] is not appropriate under the circumstances."

On May 15, 2019, the trial court sentenced the defendant to a total effective term of thirty years of incarceration, five years of which are a mandatory minimum.[4] This appeal followed.

I

The defendant claims that the trial court violated his right to jury unanimity by discharging the jury before disclosing C.A.'s postverdict comment to the parties. He argues that the court should have immediately disclosed C.A.'s comment to the parties while the jury remained in the deliberation room so that the defendant had an additional opportunity to request a poll of the jurors. The state, on the other hand, argues that the defendant's claim is unpreserved and fails to satisfy the test for determining whether a defendant can prevail on a claim of unpreserved constitutional error under *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989), as modified by *In re Yasiel R.*, 317 Conn. 773, 781, 120 A.3d 1188 (2015). We agree with the state that the defendant's claim is unpreserved and fails under the third prong of *Golding.*

We first consider whether the defendant preserved his claim that the trial court improperly failed to disclose C.A.'s postverdict comment before discharging the jury. With respect to preservation, the defendant

---

[4] Specifically, the trial court sentenced the defendant to twenty years of incarceration on the attempted murder charge; five years of incarceration on the assault charge, which was mandatory minimum time; and five years of incarceration on the charge of violation of a protective order. The court ordered all sentences to run consecutively to one another.

states in his brief that he "preserved this issue by his request to have [C.A.] questioned further to determine whether her remark to the judge reflected juror misconduct, which might include the inability to disregard a news story she was exposed to during voir dire.[5] If this court disagrees, and to the extent that [the defendant] did not explicitly base his request on his constitutional rights, the risk that the jury's verdict on the attempted murder charge was not unanimous, or was tainted by misconduct, is a constitutional issue which can be reviewed by this court under [*Golding*]." (Footnote added.) The state responds that the defendant's claim is unpreserved because the defendant (1) waived his right to poll the jury and (2) did not raise any jury unanimity issue to the court during the posttrial hearing.

Although the defendant did not exercise his right to have the jury polled by making a timely request to do so before the jurors separated or dispersed; see *State* v. *Pare*, 253 Conn. 611, 621, 755 A.2d 180 (2000); the defendant did not learn about C.A.'s postverdict comment until *after* the time to request a poll had passed. Nevertheless, the defendant never raised any issues to the trial court concerning polling or lack of unanimity of the verdict during the posttrial hearing or in a motion for a new trial. See *State* v. *Franklin*, 162 Conn. App. 78, 93, 129 A.3d 770 (2015) ("defendant did not preserve [his challenge to the verdict] by moving for a new trial pursuant to Practice Book § 42-53"), cert. denied, 321 Conn. 905, 138 A.3d 281 (2016). Because the defendant failed to raise this claim with the court, it is unpreserved. Therefore, we next consider whether the claim meets the requirements of *Golding*.

[5] During voir dire, some venirepersons, including C.A. and the jury foreperson, A.B., were exposed to a brief news report on television showing a clip about the case. During voir dire examination, however, both C.A. and A.B. told the court that they could put the news report aside and decide the case solely on the evidence they would hear in the courtroom. Aware that C.A. and A.B. had been exposed to the news report, the prosecution and defense counsel both accepted them to serve as members of the jury.

"Pursuant to *Golding*, a [defendant] can prevail on a claim of constitutional error not preserved at trial only if *all* of the following conditions are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation . . . exists and . . . deprived the [defendant] of a fair trial; and (4) if subject to harmless error analysis, the [state] has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt. . . . The first two steps in the *Golding* analysis address the reviewability of the claim, [whereas] the last two steps involve the merits of the claim." (Emphasis in original; internal quotation marks omitted.) *State* v. *Daniels*, 228 Conn. App. 321, 342, 324 A.3d 820, cert. denied, 350 Conn. 926, 326 A.3d 248 (2024). "In the absence of any one of these conditions, the defendant's claim will fail. The appellate tribunal is free, therefore, to respond to the defendant's claim by focusing on whichever condition is most relevant in the particular circumstances." (Internal quotation marks omitted.) *State* v. *Andaz*, 181 Conn. App. 228, 232, 186 A.3d 66, cert. denied, 329 Conn. 901, 184 A.3d 1214 (2018); see also *State* v. *Mejia*, 233 Conn. 215, 232, 658 A.2d 571 (1995) (resolving defendant's claim under third prong of *Golding* without deciding whether claim was of constitutional magnitude). We conclude that the defendant's claim—premised on his assertion of a violation of his right to jury unanimity—fails under the third prong of *Golding*.[6]

---

[6] The parties disagree about whether the defendant's claim satisfies the second prong of *Golding*, i.e., whether the claim is of constitutional magnitude. Specifically, the defendant argues that "the risk that the jury's verdict on the attempted murder charge was not unanimous . . . is a constitutional issue . . . ." See *State* v. *Douglas C.*, 345 Conn. 421, 438, 285 A.3d 1067 (2022) ("federal constitutional right to jury unanimity clearly applies in both state and federal courts"). The state, however, argues that the defendant alleges only a violation of his right to have the jury polled, which is not of constitutional magnitude. See, e.g., *State* v. *J.R.*, 69 Conn. App. 767, 773 n.2, 797 A.2d 560 ("the right to poll the jury is not of constitutional dimension"),

Turning to the merits of the defendant's claim, we consider whether the trial court violated the defendant's right to jury unanimity by discharging the jury before disclosing C.A.'s postverdict comment to the parties. The defendant argues that, "[w]hen, during a postverdict, ex parte discussion with the jury, a trial judge inadvertently learns anything that calls the unanimity of the jury's verdict into question, or suggests potential misconduct, the trial judge has a duty to ask the jury to remain in the deliberation room and immediately put this information on the record so that the parties can take whatever steps they deem appropriate . . . ." He contends that, "[h]ad the trial court asked the jury to remain in the deliberation room and told the parties about [C.A.'s] remarks, the defense could have exercised its rights under Practice Book § 42-31 . . . to individually poll the jurors to determine whether their verdict was truly unanimous."

The state argues that, even if the trial court had informed the parties of C.A.'s postverdict statement immediately, any subsequent polling request would have been untimely because, after the verdict was recorded and before the court sent the jury back to the deliberation room, the court released the jurors from their oath and thereafter engaged in ex parte conversation with them about the case. Thus, the state contends that the jury already had been "discharged" for the purposes of Practice Book § 42-31.

cert. denied, 260 Conn. 935, 802 A.2d 89 (2002). Because we choose to focus on the third prong of *Golding*, we do not need to resolve whether the defendant's claim invokes only his right to have the jury polled or, more broadly, alleges a violation of his constitutional right to jury unanimity and, therefore, satisfies the second prong of *Golding*.

Furthermore, even if we were to agree with the defendant and the dissenting judge that the defendant preserved his claim before the trial court or was not required to do so such that resort to *Golding* review is unnecessary, such a conclusion would not change the outcome of this appeal because we reject the defendant's claim on its merits.

Practice Book § 42-31 provides in relevant part: "After a verdict has been returned *and before the jury has been discharged*, the jury shall be polled at the request of any party or upon the judicial authority's own motion. . . ." (Emphasis added.) Our Supreme Court has stated that a jury is not discharged for the purposes of § 42-31 until its members have separated or dispersed. See *State* v. *Pare*, supra, 253 Conn. 621 ("[A] trial court's obligation to poll the jury upon a timely request from either party is mandatory. . . . [A] jury is not discharged for the purpose of § 42-31 until its individual members separate or disperse and, therefore, a request submitted prior thereto is timely."). The court in *Pare*, however, also favorably cited federal case law instructing that, if "a jury remains as an undispersed unit within the control of the court *and with no opportunity to mingle with or discuss the case with others*, it is undischarged and may be recalled." (Emphasis added.) Id., 630.

Although the jury in the present case remained in the deliberation room under the effective supervision of the trial court when C.A. made her postverdict comment to the judge, whether the jury had been "discharged" at that time for the purposes of Practice Book § 42-31 is not entirely clear. Under *Pare*, once jurors are effectively discharged from their obligations and free to discuss the case with nonjurors, any subsequent poll would be ineffective. The trial judge is a nonjuror, and the prohibition against a judge talking ex parte with one or more jurors had been violated. Nothing in § 42-31 speaks to the situation here, in which the judge already has gone into the deliberation room and conversed with the jurors. In *Pare*, the trial court had not spoken to the jurors after they left the courtroom and, thus, that decision provides only limited guidance regarding the circumstances at issue in the present case.

Nevertheless, even if we assume, without deciding, that the jurors in the present case had not been discharged for purposes of polling, despite the ex parte discussion with the trial judge, we would conclude that, under the facts of this case, the judge was not required to disclose C.A.'s comment before allowing the jury to disperse.

As a threshold matter, we set forth the standard of review. "The scope of our appellate review depends upon the proper characterization of the [actions taken] by the trial court." (Internal quotation marks omitted.) *State* v. *Colon*, 272 Conn. 106, 281, 864 A.2d 666 (2004), cert. denied, 546 U.S. 848, 126 S. Ct. 102, 163 L. Ed. 2d 116 (2005). In the present case, the issue is whether the trial court violated the defendant's right to jury unanimity by discharging the jury after C.A. told the judge that she felt "a little guilty about the attempted murder charge." Whether the trial court properly discharged the jury presents a question of law over which our review is plenary. See *State* v. *Colon*, supra, 282. Therefore, "we must decide whether [the trial court's] conclusions are legally and logically correct and find support in the facts that appear in the record." (Internal quotation marks omitted.) Id. Nevertheless, the court's findings as to the circumstances surrounding the discharge of the jury and C.A.'s comment are findings of fact that will not be disturbed unless they are clearly erroneous. See id. "A finding of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." (Internal quotation marks omitted.) Id.

The defendant argues that the trial court had a duty to inform the parties of C.A.'s comment before discharging

the jury so that the defendant had an additional opportunity to request a poll of the jury.[7] We conclude that, under the circumstances of this case, the court did not have such a duty.

Generally, "[i]n a criminal trial, ex parte conversations between the judge and jury are constitutionally prohibited." (Internal quotation marks omitted.) *State* v. *Kamel*, 115 Conn. App. 338, 349 n.2, 972 A.2d 780 (2009). It is common practice, however, "for judges to enter the jury room after a verdict has been returned to thank the jury for its service and converse with jurors about their experience . . . ." Id. "Answering jurors' questions, to promote good public relations, and soliciting feedback regarding the performance of members of the bar are within the trial court's administrative functions and are permissible . . . as long as the judge fully discloses his [or her] intention to speak with the jury and discloses the subject matter to be discussed." (Internal quotation marks omitted.) *State* v. *Durant*, 94 Conn. App. 219, 231–32, 892 A.2d 302 (2006), aff'd, 281 Conn. 548, 916 A.2d 2 (2007).

Connecticut courts have not yet addressed what duty, if any, a trial court owes parties when, after the verdict is recorded but before the jury has dispersed, a member of the jury makes an ex parte comment related to the verdict. The United States Supreme Court has stated the following concerning the disclosure of ex parte communications: "When an ex parte communication

[7] Although, after the jury foreperson announced the verdict, the courtroom clerk asked the jurors, collectively, whether they agreed with the verdict, and they collectively answered affirmatively, that inquiry does not constitute polling the jury. Pursuant to Practice Book § 42-31, "[a] poll shall be conducted by the clerk of the court by *asking each juror individually* whether the verdict announced is such juror's verdict." (Emphasis added.); see also *State* v. *Pare*, supra, 253 Conn. 637 (distinguishing between "the jury's *collective assent* to the verdict," which does not constitute polling, and "an *individual interrogation*," which is required under § 42-31 (emphasis added)).

[between judge and juror] relates to some aspect of the trial, the trial judge generally should disclose the communication to counsel for all parties. The prejudicial effect of a failure to do so, however, can normally be determined by a [posttrial] hearing. The adequacy of any remedy is determined solely by its ability to mitigate constitutional error, if any, that has occurred. . . . [Posttrial] hearings are adequately tailored to this task." (Citations omitted; footnote omitted.) *Rushen* v. *Spain*, 464 U.S. 114, 119–20, 104 S. Ct. 453, 78 L. Ed. 2d 267 (1983).[8] Although the court in *Rushen* addressed ex parte communication that occurs *during* the course of a trial, we are persuaded that this rule also should apply if an ex parte communication occurs between the trial judge and a juror after the verdict is recorded but before the jury has dispersed because, at that time, the jury remains under the effective supervision of the trial court.

In *Rushen* v. *Spain*, supra, 464 U.S. 114, evidence was introduced during trial that a member of the Black Panther Party, who was neither a party nor a witness at trial, had previously been convicted of a murder that was unrelated to the crimes at issue in the case. Id., 115–16. After the defendant was convicted and sentenced, defense counsel learned of ex parte communications that occurred during the trial between the trial judge and a member of the jury, during which the juror disclosed that she recognized the name of the Black

---

[8] We note that some federal courts have "recognized that a court's ex parte communication with the jury will not require a reversal where substantive rights of parties have not been adversely affected." (Internal quotation marks omitted.) *United States* v. *Mann*, 685 F.3d 714, 721 (8th Cir.), cert. denied, 568 U.S. 1029, 133 S. Ct. 670, 184 L. Ed. 2d 464 (2012); see also *United States* v. *Balderas*, Docket Nos. 93-1201 and 93-1202, 1994 WL 144449, *4 (6th Cir. April 21, 1994) (unpublished opinion); *United States* v. *de Hernandez*, 745 F.2d 1305, 1310 (10th Cir. 1984). We find this rule to be consistent with the United States Supreme Court's holding in *Rushen* v. *Spain*, supra, 464 U.S. 119–20.

Panther Party member as the man who had been convicted of murdering her childhood friend. Id., 116. "The judge [had] asked her . . . whether her disposition of the case would be affected [and] [s]he assured him that it would not." Id. Defense counsel, upon learning about these ex parte communications, "moved for a new trial. At a hearing on the motion, [the] juror . . . testified that she had not remembered her friend's death during voir dire and that her subsequent recollection did not affect her ability impartially to judge [the defendant's] innocence or guilt. She admitted telling other jurors that she personally knew [the Black Panther Party member's] murder victim, but denied making any disparaging remarks about the Black Panther Party. The trial judge concluded that the ex parte communications lacked any significance and that [the defendant] suffered no prejudice therefrom. . . . Accordingly, he denied the motion for new trial." (Citation omitted; internal quotation marks omitted.) Id.

On appeal, the United States Supreme Court concluded: "The [posttrial] hearing in this case created more than adequate support for the conclusion that [the juror's] presence on the jury did not prejudice [the defendant]. The [murder of the juror's friend] was not related to the crimes at issue in the trial. [The member of the Black Panther Party who had been convicted of the murder of the juror's friend] was not connected to any of the offenses for which [the defendant] was convicted and he did not testify at the trial. [The juror] . . . repeatedly testified that, upon recollection, the incident did not affect her impartiality. She turned to the most natural source of information—the trial judge—to disclose the information she should have but failed to recall during voir dire. Their ex parte communication was innocuous. They did not discuss any fact in controversy or any law applicable to the case. The judge simply assured her that there was no cause for concern. Thus,

the state courts had convincing evidence that the jury's deliberations, as a whole, were not biased by the undisclosed communication of [the juror's] recollection. . . . [T]herefore . . . the alleged constitutional error [was] harmless beyond a reasonable doubt." (Footnote omitted.) Id., 120–21.

We additionally find instructive *United States* v. *Jefferson*, 258 F.3d 405 (5th Cir.), cert. denied, 534 U.S. 967, 122 S. Ct. 379, 151 L. Ed. 2d 289 (2001), in which the United States Court of Appeals for the Fifth Circuit addressed the trial court's handling of a juror's postverdict comment concerning the verdict. In *Jefferson*, "the jury foreperson announced that they had reached a unanimous decision. The form of the verdict, signed by all twelve members of the jury was read aloud in open court. 'We the jury find the defendant . . . guilty as charged.' . . . Upon its own motion, the court then polled all twelve members of the jury individually, [asking] 'whether this is your verdict' to which all twelve jurors answered affirmatively. Only after this did a juror indicate that she had voted guilty but had reservations. Upon hearing the juror express that she had reservations, the court inquired of the juror, '[i]s this your verdict?' whereupon the juror nodded her head affirmatively. The court then received, announced and recorded the verdict." Id., 411. The defendant subsequently moved for a new trial on the ground that the verdict was not unanimous, but the court denied the motion. Id., 410.

On appeal, the defendant in *Jefferson* claimed that the "juror's expression of reservations concerning her verdict during the polling of the jury indicated a lack of unanimity and the subsequent questioning employed by the trial judge was in violation of [rule 31 of the Federal Rules of Criminal Procedure]."[9] Id. The Fifth

[9] Similar to Practice Book § 42-31, rule 31 of the Federal Rules of Criminal Procedure provides in relevant part: "(d) Jury Poll. After a verdict is returned but before the jury is discharged, the court must on a party's request, or

Circuit stated: "While a juror's expression of reserva-
tions may indicate the need for further inquiry to ascer-
tain with certainty that the juror assents to the verdict
as rendered, simply expressing reservations in conjunc-
tion with a guilty verdict, in and of itself, is not sufficient
to indicate a lack of unanimity. The standard of beyond
a reasonable doubt does not require a juror to find with
absolutely certainty that a defendant is guilty. A juror
may have reservations and still find the evidence pre-
sented to be sufficient to meet the burden established
by the standard of beyond a reasonable doubt. . . .
Here, prompted by the juror's guilty verdict and expres-
sion of reservations, the trial judge's inquiry to ascertain
with certainty the juror's assent to the guilty verdict
was an appropriate exercise of control over the trial
proceedings. The trial court correctly denied [the defen-
dant's] motion for new trial . . . ." (Citations omitted.)
Id., 411–12.

In the present case, C.A.'s postverdict, ex parte com-
ment to the trial judge that she "[felt] a little guilty
about the attempted murder charge" relates to an aspect
of the trial, namely, the verdict. Similar to the ex parte
communications in *Rushen* v. *Spain*, supra, 464 U.S.
114, however, C.A.'s comment did not raise constitu-
tional concerns. C.A. did not indicate that she, or any
other member of the jury, had not *agreed* to the verdict.
Her statement cannot reasonably be construed as an
equivocation or expression of reservation about the
verdict. Rather, C.A. simply told the trial judge how she
*felt* about the verdict to which she had agreed. Similar
to the juror's comment in *Jefferson*, C.A.'s expression
of her feelings in conjunction with the guilty verdict,
in and of itself, is not sufficient to indicate a lack of
unanimity. Because the trial court did not inquire about

may on its own, poll the jurors individually. If the poll reveals a lack of
unanimity, the court may direct the jury to deliberate further or may declare
a mistrial and discharge the jury." Fed. R. Crim. P. 31 (d).

C.A.'s comment at the time it was made or during the posttrial hearing, any inferences we may draw about what C.A. meant would be purely speculative. C.A.'s comment expressed reservations about the verdict, but reservations do not necessarily mean that she did not find that the state had met its burden of proving the attempted murder charge beyond a reasonable doubt. See *United States* v. *Jefferson*, supra, 258 F.3d 411. Because we cannot infer that C.A. intended her comment to inform the judge that the verdict was not unanimous, the judge's failure to disclose C.A.'s comment to the parties before discharging the jury does not amount to a constitutional violation.

Even if C.A.'s comment had indicated a risk that the verdict lacked unanimity, the trial court's posttrial hearing created adequate support for the conclusion that the verdict was, in fact, unanimous. At the posttrial hearing, the court, similar to the court in *Jefferson*, asked C.A. whether, when the clerk asked the members of the jury if they agreed with the verdict, she had answered affirmatively. C.A. replied: "I *absolutely* did." (Emphasis added.) Because C.A. affirmed her verdict at the posttrial hearing and her comment did not reasonably implicate any other members of the jury, the posttrial hearing mitigated any concern that the verdict lacked unanimity. This is particularly so in light of the fact that the court had inquired as to whether the jurors collectively accepted the verdict provided by the foreperson, and they collectively indicated in the affirmative that they agreed with the verdict. Even if the judge, despite relieving the jurors of their oath[10] before conversing with them, could have elected to disclose C.A.'s

_____

[10] The jurors' oath, as set forth in General Statutes § 1-25, provides: "You solemnly swear or solemnly and sincerely affirm, as the case may be, that you will, without respect of any persons or favor of any person, decide this case between the state of Connecticut and the defendant (or defendants) based on the evidence given in court and on the laws of this state, as explained by the judge; that you will not talk to each other about this case until instructed to do so; that you will listen to and consider what the other

comment to the parties before the jury dispersed and granted the defendant an additional opportunity to request a poll of the jurors, we conclude that the court did not violate the defendant's right to jury unanimity by discharging the jury and holding a posttrial hearing to confirm C.A.'s verdict.[11]

Our review of the record reveals that the trial court mitigated any risk that the verdict was not unanimous by disclosing C.A.'s comment to the parties and subsequently holding a posttrial hearing to confirm her verdict. We therefore conclude that the court did not violate the defendant's right to jury unanimity by discharging the jury before disclosing C.A.'s comment to the parties. Thus, the defendant's claim fails under the third prong of *Golding* because he failed to prove that the alleged constitutional violation exists.

jurors have to say in deliberations about this case; that you will not speak to anyone else, or allow anyone else to speak to you, about this case until you have been discharged by the court; and that when you reach a decision, you will not disclose the decision until it is announced in court; so help you God or upon penalty of perjury."

[11] It is important to note that the record does not disclose what behaviors the jurors engaged in prior to the judge's entering the deliberation room. Having been released from their oath, the jurors were free to speak about the case and their verdict on their cell phones with nonjurors, potentially with relatives, friends, the jury alternates, employers, the courtroom clerk who was ordered to bring some documents to them, courthouse marshals, and groups comprised of only some, not all, members of the jury. In other words, the jurors could have discussed the case with "outsiders" other than the judge. The jurors also were free to look up news and social media reports concerning the case. Finally, we do not know how many of the jurors heard C.A.'s comment to the judge. In short, there were a number of ways that the sanctity of the jurors' deliberations could have already been tainted prior to C.A.'s comment that would have rendered the reliability of any subsequent jury poll problematic.

We share the concerns expressed in the concurring opinion, and we would strongly encourage the Rules Committee of the Superior Court, which is the "appropriate forum in which to fully and fairly consider any potential amendment to the procedural rules"; *Newland* v. *Commissioner of Correction*, 322 Conn. 664, 686 n.7, 142 A.3d 1095 (2016); to evaluate current practices regarding the polling of jurors and to consider whether changes to Practice Book §§ 42-31 and 42-32 are warranted.

## II

The defendant next claims that the trial court violated his constitutional right to a fair trial by denying his request to question C.A. at the posttrial hearing about why she made a postverdict comment to the judge that she felt "a little guilty about the attempted murder charge." He argues that C.A. may have felt guilty because juror misconduct had occurred and, further, that, because the judge did not ask C.A. why she made that comment, there was "no evidence upon which the trial court could rule out the possibility of misconduct." We reject the defendant's claim that the judge was required to inquire into why C.A. made the comment.

Our Supreme Court, in *State* v. *Brown*, supra, 235 Conn. 502, held that "a trial court must, when presented with any allegations of jury misconduct, conduct a preliminary inquiry, sua sponte if necessary, in order to assure itself that a defendant's constitutional right to a trial before an impartial jury has been fully protected. [This] requirement . . . still leaves the form and scope of such an inquiry to be determined by the trial court within the exercise of its discretion. . . . In the proper circumstances, the trial court may discharge its obligation simply by notifying the defendant and the state of the allegations, providing them with an adequate opportunity to respond and stating on the record its reasons for the limited form and scope of the proceedings held. In other circumstances, the trial court itself may need to cause an investigation of the allegations of jury misconduct to be conducted through informal or formal means." (Citations omitted.) Id., 528–29.

The court in *Brown* articulated the following factors to guide trial courts in exercising their discretion as to the form and scope of an inquiry into allegations of jury misconduct: "The first factor, the private interest involved, focuses on the criminal defendant. . . . The

second factor, the risk of deprivation of a defendant's constitutional right to a trial before an impartial jury, varies with the seriousness and the credibility of the allegations of jury misconduct. *The more obviously serious and credible the allegations, the more extensive an inquiry is required; frivolous or incredible allegations may be disposed of summarily.* . . . The third factor focuses on the state's interest. . . . [A]fter a jury verdict has been accepted . . . state interests . . . favor proceedings limited in form and scope. . . . It is the trial court that must, in the exercise of its discretion, weigh the relevant factors and determine the proper balance between them." (Citations omitted; emphasis added; internal quotation marks omitted.) Id., 530–32. "Our review on appeal is limited to the inquiry of whether the court's review of the alleged jury misconduct can be characterized fairly as an abuse of discretion." *State* v. *Kamel*, supra, 115 Conn. App. 343.

When a trial court holds a postverdict hearing, "[i]t is well established that evidence as to the expressions and arguments of the jurors in their deliberations and evidence as to their own motives, beliefs, mistakes and mental operations generally, in arriving at their verdict is excludable . . . ." (Internal quotation marks omitted.) *State* v. *Gary*, supra, 273 Conn. 415. This rule comes from Practice Book § 42-33, which provides in relevant part: "Upon an inquiry into the validity of a verdict, *no evidence shall be received to show the effect of any statement, conduct, event or condition upon the mind of a juror nor any evidence concerning mental processes by which the verdict was determined.* . . ." (Emphasis added.) "That rule has been aptly described as applying the parol evidence rule to a jury's verdict, so that their outward verdict as finally and formally made, and not their prior and private intentions, is taken as exclusively constituting the act. . . . That the verdict may have been the result of compromise, or a

mistake on the part of the jury, is possible. But verdicts cannot be upset by speculation or inquiry into such matters." (Citation omitted; internal quotation marks omitted.) *State* v. *Gary*, supra, 415–16.

In the present case, after the verdict was recorded, C.A. told the trial judge that she felt "a little guilty about the attempted murder charge." The court, sua sponte, held a posttrial hearing during which it asked C.A. whether she affirmed that she had agreed to the guilty verdict. C.A. testified that she "absolutely" did. The court thereafter did not ask C.A. any additional questions. The court's actions clearly satisfied the preliminary inquiry required by *Brown*. On the basis of C.A.'s testimony at the posttrial hearing, the court determined that there was no indication on the part of C.A. that the verdict lacked unanimity or that juror misconduct had occurred. The court further determined that any further questions about why C.A. made that postverdict comment would constitute improper inquiry into the mental processes by which the verdict was determined.

The defendant argues that C.A. may have felt guilty about the attempted murder charge because juror misconduct occurred such as another juror referencing a news report,[12] racial animus, or other consideration of extraneous information. He also contends that "[t]he state's interests would not have been harmed by confirming what [C.A.] had said and asking, in general

---

[12] The defendant argues that C.A.'s postverdict comment raises concerns about juror misconduct because C.A. and the jury foreperson, A.B., had been exposed to the news report about the case during voir dire and, therefore, C.A.'s comment indicates that either she or A.B. may have improperly referenced that news report during deliberations. See footnote 5 of this opinion. The trial court addressed concerns regarding the exposure to the news report before the trial began, and there is no indication that the news report affected either juror's impartiality during the trial or deliberations. Any inference that C.A.'s postverdict comment meant that either she or A.B. had referenced the news report during deliberations would be purely speculative. Accordingly, we reject the defendant's argument.

terms, if misconduct had occurred." Verdicts, however, "cannot be upset by speculation or inquiry" into the deliberation process. (Internal quotation marks omitted.) *State* v. *Gary*, supra, 273 Conn. 416. At the posttrial hearing, the trial court confirmed C.A.'s verdict, and C.A.'s postverdict comment did not "obviously" indicate juror misconduct such that it required a "more extensive" inquiry. *State* v. *Brown*, supra, 235 Conn. 531; see also *State* v. *Gary*, supra, 417 ("the defendant takes great pains to characterize the thoughts and discussions described in [the juror's postverdict] letter as juror misconduct, which is subject to judicial inquiry, rather than as the mental operations of [that juror] and the other jurors, into which the courts may not delve"); *State* v. *Castonguay*, supra, 194 Conn. 437 ("[i]n the absence of a fair indication to the contrary, the jury is presumed to have followed the instructions of the court . . . [and] the inquiry [into juror misconduct] must be narrow" (internal quotation marks omitted)); *Josephson* v. *Meyers*, 180 Conn. 302, 310–11, 429 A.2d 877 (1980) (court may not consider evidence that juror was unduly influenced by statements of fellow jurors). Thus, we conclude that the court did not abuse its discretion in conducting a limited inquiry about C.A.'s postverdict comment and denying the defendant's request to inquire into *why* C.A. made that comment. See *State* v. *Alston*, 272 Conn. 432, 454, 862 A.2d 817 (2005) (concluding that trial court did not abuse its discretion by conducting limited inquiry into allegation of juror misconduct).

The judgment is affirmed.

In this opinion KELLER, J., concurred.